Upon the motion to open the default this affidavit was presented, and also one made by the defendant's attorney setting forth the same facts, and one made by one of the defendants containing an affidavit of merits. The court below granted the motion to open the default, but imposed as conditions either the deposit of the amount of the judgment or the giving of a surety company bond. The court clearly had no right to require the giving of a surety company bond. Duly v. Herman, 84 Misc. Rep. 26, 145 N. Y. Supp. 901. There had been but one adjournment of the case, and the facts herein are very similar to those in the case of Stein v. Cohen, 149 N. Y. Supp. 864. Under the circumstanecs disclosed, there should have been no terms imposed.

Order reversed, judgment vacated, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

## STANDARD UTILITY CO. v. NEW YORK RYS. CO.

(Supreme Court, Appellate Term, First Department. June 14, 1915.)

APPEAL AND ERROR ☞1060—CONDUCT OF COUNSEL—REMARKS TENDING TO CREATE PREJUDICE.

In an action against defendant railway company for injuries to plaintiff's truck in a collision, plaintiff's attorney, in examining his own witness, brought out the fact that a representative of the railway company had been to her house and had given her $25. It appeared on cross-examination that she had also been injured by the collision, and had given defendant a statement of how the accident occurred, which varied from her testimony, and that she had thereafter been paid $25 in settlement of her claim for injuries, and she testified that she signed the statement because she thought it contained the story told by her to the investigator. Plaintiff's counsel, in summing up, stated, and on objection reiterated, that "they gave her that $25 to buy her, and she did not stay bought," and made other comments thereon which the court permitted to stand. *Held*, that such examination and statements were not justified, and could have no object except to prejudice the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by the Standard Utility Company against the New York Railways Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued May term, 1915, before GUY, LEHMAN, and WHITAKER, JJ.

James L. Quackenbush, of New York City (M. J. Daley, of New York City, of counsel), for appellant.

Lester W. Eisenberg, of New York City, for respondent.

LEHMAN, J. The plaintiff has recovered a judgment for injuries to an automobile truck caused by a collision with a car operated by the defendant. The plaintiff produced as its witnesses the chauffeur of the truck and a passenger on the car. Their testimony, if true, is sufficient

to .allow the jury to find that the accident occurred through the defendant's negligence.   On the other hand, the defendant produced as its witnesses the motorman, conductor, and five passengers on the car, and their testimony, if true, clearly shows that the accident occurred through the negligence of the plaintiff's chauffeur.   In spite of the numerical preponderance of the witnesses produced by the defendant, I should be loath to disturb the verdict of the jury, provided the record disclosed that it was founded solely upon a consideration of the credibility of the material testimony produced; but in this case the plaintiff's attorney has willfully introduced testimony not material to the issues, but calculated and intended to prejudice the jury against the defendant, and which may and probably did affect its judgment.

The plaintiff, as stated before, called one passenger as witness to the accident.   The examination of this witness began as follows:

"Q. Now, Miss Pilchard, you have been to the railroad company's office, haven't you?   A. No.   Q. To the lawyers for the railroad company, you have been down to that office, haven't you?   A. No.   Q. Do you know that man sitting there?   Do you know Mr. Applegate?   A. Yes; he was up to my house. ⁕  ⁕  ⁕  Q. Has he given you any money?   A. Yes.   Q. How much money did he give you?   A. $25.

"By the Court: What?

"Plaintiff's Counsel: $25.

"Defendant's Counsel: That is objected to.

"The Court: Is that in connection with this case?

"Defendant's Counsel: I move to strike it out.

"Plaintiff's Counsel: It will develop.

"Defendant's Counsel: I move to strike that out.

"The Court: This is a very unheard-of proceeding.   Is she a party to his action?

"Plaintiff's Counsel: No, your honor; she is a witness that I am making my own.   It may be necessary for to cross-examine her as the trial progresses to get certain testimony before this court.   The only way I can show hostility is by showing that—

"The Court: I will sustain the objection, if they paid her any money, and I will strike it out."

This examination was certainly properly characterized by the learned court as an "unheard-of proceeding."   The plaintiff's counsel certainly must be presumed to know that he has no right to impeach his own witness.   He has not even the poor excuse that she was a hostile witness, for not only was there nothing to lead to such an inference, but it subsequently appeared that she had actually gone to the office of the plaintiff's attorney and given him a statement as to the accident.   Inasmuch, however, as the defendant's attorney did not at that time move for a mistrial, and the trial justice properly characterized counsel's impropriety, it might be possible for an appellate court to disregard it, if it were the only example of prejudicial suggestion, especially as this payment was subsequently explained.   It appeared on the cross-examination of this witness that she had also been injured by the collision, that she had given to the defendant a statement of how the accident occurred, that this statement is completely at variance with her testimony on the stand, and that she had thereafter been paid $25 in settlement of her own claim for injuries.   On redirect examination the witness was permitted to explain this variance between the statement and her testi-

mony, and she then testified that she cannot read English, and that the statement was not read to her and does not contain what she told the investigator. It will be noted that there is not the slightest evidence that the $25 was paid to secure the statement, or for any other purpose than in settlement of her actual claim. On the contrary, it affirmatively appears according to her own testimony that the reason she signed the statement was that she thought it contained the truth as told by her to the investigator. In spite of this fact, the plaintiff's attorney stated in his summing up:

"They gave her that $25 to buy her, and she did not stay bought."

The defendant's counsel then asked that a juror be withdrawn, and the court said:

"Unless counsel will withdraw that remark."

Counsel, however, did not withdraw the remark, but stated:

"I say that the facts and incidents surrounding the circumstances of the payment of the $25 I have a right to logically comment upon when they get into their jury room; and I say now, and I repeat for the record again, your honor, that when I asked this adjuster upon this stand, 'Did you give her the $25 before she signed that statement?' he said, 'No,' and 'Did you give her the $25 before she signed a release?' and he said, 'No,' and 'Then after she signed that statement, and after she signed that release, you paid her the $25?' he said, 'Yes.' And now I say, as a logical inference from all of those circumstances, it appeals to me very strongly that the $25 were given, not for the purpose of settling and adjusting the claim that she might have against this railroad company, not for the purposes of having closed her lips and deterring her from presenting a claim against them, but to close her lips and to seal her lips because *in this case and in other cases* they denied liability to the plaintiffs who sued."

At the close of this statement defendant renewed his motion to withdraw a juror unless counsel would withdraw his statement that the "girl was paid $25 to buy her testimony," and the trial justice denied the motion, thus inferentially holding that the statement was proper.

There is no circumstance in this case that can possibly lead to an inference that the $25 was paid to the witness to close her lips; there is absolutely no testimony that the statement was obtained through such payment, but, on the contrary, the witness' only claim is that she did not know what she was signing; yet the counsel was permitted to state that the witness was bought, and even to refer to other cases as if it were a general custom. There was and could be no possible object in such a statement, except to prejudice the jury. Even if it were true that the statement was bought, it would impeach the testimony of the plaintiff's only corroborating witness and weaken his case. It cannot be urged that this statement was not prejudicial; it was made with intent to prejudice, and we are bound to give it the effect which counsel intended.

Judgment should be reversed, and new trial ordered, with costs to appellant to abide the event.

WHITAKER, J., concurs. GUY, J., takes no part.